**Tim Fox**
Attorney General of Montana
**Alan Joscelyn**
Assistant Attorney General
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
ph: (406) 444-2026; (406) 444-3442
fax: (406) 444-3549
timfox@mt.gov; alanjoscelyn@mt.gov

**Rebecca Dockter**
Chief Legal Counsel
**William A. Schenk**
Agency Legal Counsel
Special Assistant Attorneys General
Montana Department of Fish, Wildlife and Parks
1420 East Sixth Avenue
PO Box 200701
Helena, MT 59620-0701
ph: (406) 444-4047; (406) 444-3312
rdockter@mt.gov; bschenk@mt.gov
*Attorneys for State of Montana and
Montana Department of Fish, Wildlife and Parks
Defendant Intervenor Applicants*

**FILED**

**JUN 0 1 2015**

Clerk, U.S District Court
District Of Montana
Butte

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) <br> WESTERN WATERSHEDS PROJECT, ) <br> GEORGE WUERTHNER, PAT MUNDAY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SALLY JEWELL, Secretary, U.S. ) <br> Department of the Interior, in her official ) <br> capacity; DAN ASHE, Director, U.S. Fish ) <br> and Wildlife Service, in his official capacity; ) <br> and UNITED STATES FISH AND ) <br> WILDLIFE SERVICE, ) <br> ) <br> Defendants, ) | Case No. CV-15-4-BU-SEH <br><br> **BRIEF IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE BY STATE OF MONTANA AND MONTANA DEPARTMENT OF FISH, WILDLIFE & PARKS** |

| | |
|---|---|
| STATE OF MONTANA and MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS,<br><br>    Defendant Intervener Applicants. | )<br>)<br>)<br>)<br>) |

The State of Montana and the Montana Department of Fish, Wildlife and Parks' ("Montana") submits the following Brief In Support of Unopposed Motion to Intervene pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b).

## INTRODUCTION

Plaintiffs Center for Biological Diversity, *et al.*, seek judicial review of the United States Fish and Wildlife Service's ("Service") decision not to list the distinct population segment of Arctic Grayling in the Upper Missouri River Basin as a threatened species under the Endangered Species Act ("ESA"). *See* 79 Fed. Reg. 49,384 (Aug. 20, 2014) ("12-Month Finding").

Montana seeks defendant intervention as a matter of right under Fed. R. Civ. P. 24(a). Alternatively, Montana moves to be permitted to intervene as a defendant pursuant to Fed. R. Civ. P. 24(b).

## FACTUAL BACKGROUND

The State of Montana, through its Department of Fish, Wildlife and Parks ("Department") and its Fish and Wildlife Commission ("Commission"), has specific statutory mandates for the supervision, management, and regulation of fish and fish habitat. *See* Mont. Code Ann. §§ 87-1-201 and 87-1-301.

The Department is required by law to implement programs that manage fish in a manner that prevents the need for listing under § 87-5-107, MCA or under the federal Endangered Species Act, 16 U.S.C. 1531, *et seq.* and to manage a species that is a potential candidate for listing under § 87-5-107, MCA or under the federal ESA in a manner that assists in the maintenance or recovery of those species.

As part of these duties, Montana has developed and is funding an extensive Arctic grayling conservation program within the upper Missouri River basin. 79 Fed. Reg. 49400-49405 (August 20, 1014). The program includes permanent staff dedicated to protecting and monitoring aboriginal Arctic grayling populations and their habitats, establishing and monitoring conservation populations, managing conservation broods and supporting and implementing research studies. Id., 49408-49410. Montana has also played a central role in developing and implementing all aspects of a candidate conservation agreement with assurances program in the Big Hole River drainage. Id., 49407-49408. Through long-term agreements with non-federal landowners, the Big Hole Candidate Conservation Agreement with Assurances ("CCAA") program has effectively established habitat conservation and improvement efforts in the majority of occupied and essential Arctic grayling habitats in the Big Hole River drainage. Id.

If successful, Plaintiffs' efforts may result in Montana being divested of its authority to continue managing Arctic grayling and Arctic grayling habitat within

its borders and that authority being vested instead with the federal government under the auspices of the ESA.

## ARGUMENT

As set forth more fully below, Montana moves to intervene as a matter of right under Fed. R. Civ. P. 24(a). Alternatively, Montana moves for permissive intervention under Fed. R. Civ. P. 24(b).

### A. Montana May Intervene as a Matter of Right Under Fed. R. Civ. P. 24(a).

Fed. R. Civ. P. 24(a) governs intervention as a matter of right and provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

An applicant who seeks to intervene as a matter of right in a pending lawsuit must show that: (1) the application is timely; (2) the applicant has a significant protected interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *U.S. v. City of Los Angeles.*, 288 F.3d 391, 397 (9th Cir. 2002).

The Ninth Circuit Court of Appeals has noted the tradition of liberal construction of Rule 24 in favor of applicants for intervention. *Sagebrush Rebellion Inc. v. Watt,* 713 F.2d 525, 527 (9th Cir. 1983); *see also, U.S. v. Oregon,* 839 F.2d 635, 637 (9th Cir. 1988). Requirements for intervention are broadly interpreted in favor of intervention. *U.S. v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004). A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. *City of Los Angeles,* 288 F.3d at 398 (internal quotations omitted).

Montana meets the four-part analysis for intervention as a matter of right because its motion is timely, it has significant protected interests that may be impaired if relief is granted to Plaintiffs, and the federal Defendant cannot adequately represent its sovereign state interests.

### 1. Montana's motion to intervene is timely.

In determining whether a motion to intervene is timely, a court considers three factors: (1) stage of proceedings; (2) prejudice to other parties; and (3) reason for, and length of, delay. *Smith v. Marsh,* 194 F.3d 1045, 1050 (9th Cir. 1999); *County of Orange v. Air Cal.,* 799 F.2d 535, 537 (9th Cir. 1986). The mere lapse of time, in and of itself, is not sufficient for a court to determine that a motion to intervene is not timely. *Air Cal.,* 799 F.2d at 537. Existing parties are not prejudiced when "the motion was filed before the district court made any

substantive rulings." *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996); *Idaho Farm Bureau Fedn. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).

Montana meets the three factors for timeliness of an intervention motion. First, the case is in the early stages. On May 11, 2015, this Court established a July 1, 2015 deadline for joinder of parties. Doc. 8, Case Management Plan (May 11, 2015). Further, Defendant only filed its answer on April 13, 2015, and thus far the Court has made no substantive rulings in this matter. Second, because the case is currently in the early stages and no substantive rulings have been made, no party will suffer prejudice by Montana's intervention. *See, N.W. Forest Res. Council*, 82 F.3d at 837. Additionally, because the case is in the early stages, there has, in effect, been no substantive delay by Montana in moving to intervene. Finally, Montana will comply with the deadlines imposed by the established case management plan. Accordingly, Montana meets the timeliness requirement to intervene as a matter of right under Fed. R. Civ. P. 24(a).

**2. Montana has significant protected interests in this matter.**

Fed. R. Civ. P. 24(a)(2) "does not require a specific legal or equitable interest[.]" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal citation omitted). Rather, it is generally sufficient that "the interest is protectable under some law, and that there is a relationship between the legally

protected interest and the claims at issue." *Id.* (internal citation omitted). The potential intervenor's interest "need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Id.* (internal citation omitted).

Congress acknowledged in § 6 of the ESA, 16 U.S.C. § 1535, that all states have a unique concern for the preservation and enhancement of fish, wildlife, and plants. In fact, § 6 of the ESA, directs the Secretary of Interior to cooperate with the states "to the maximum extent practicable." Moreover, the United States Supreme Court has recognized a state's interest in managing and preserving wildlife for the benefit of its citizens. *See Baldwin v. Fish and Game Commn.,* 436 U.S. 371, 377, 385 (1978). In addition, the State of Montana through the Department and Commission, has specific statutory mandates to manage and regulate fish and fish habitat. *See* Mont. Code Ann. §§ 87-1-201 and -301.

In the case of the Arctic grayling specifically, Montana's successful management of the species has resulted in an overall stable to increasing population trend of Arctic grayling in the upper Missouri River basin. 79 Fed. Reg., 49396-49399 (August 20, 2014). Further, Montana contains the vast majority of historic and current habitat and Arctic grayling in the distinct population segment. Id., 49385-49388. Montana's interest in continuing to manage Arctic grayling populations and habitat within its borders and pursuant to

its statutory authority is a significant protected interest for purposes of Fed. R. Civ. P. 24(a).

### 3. Montana's interests will be impaired if the Arctic grayling is listed under the ESA.

A potential intervenor has a "sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *State ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2006). An applicant for intervention need only show that disposition of the case may impair its protectable interest. *See City of Los Angeles*, 288 F.3d at 401.

Plaintiffs' complaint – if successful – could ultimately result in the Arctic Grayling being listed under the ESA, thus stripping Montana of its ability to continue managing the species. If listed, Arctic grayling management would be dictated by the provisions of the ESA and its implementing regulations and carried out primarily by the Service, largely to the exclusion of Montana or Montana law. Further, if the Arctic grayling is listed, the Service may designate critical habitat for the species, which could impact land use decisions in Montana.

In each of these instances, Montana's ability to carry out its legally protected interest in management of Arctic grayling and Arctic grayling habitat in the state would be impaired for purposes of Fed. R. Civ. P. 24(a).

### 4. Existing parties are not able to adequately represent Montana's interests.

The Ninth Circuit has stated that:

> The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. However, the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate.

*S.W. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 822-23 (9th Cir. 2001).

In determining adequacy of representation, the court considers: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *City of Los Angeles*, 288 F.3d at 398 (internal citation omitted). Because of the separate sovereign interests possessed by individual states, the Ninth Circuit has observed:

> It would be especially unbecoming for the federal courts to pass on a great question in which a sovereign state of the Union has a direct interest, if not as lord paramount, at least as representing all its citizens, without affording it an opportunity to be heard before the legal proceedings in which the question is involved are concluded.

*Cal. v. U.S.*, 180 F.2d 596, 600 (9th Cir. 1950) (internal citation omitted).

While the Service and Montana may agree whether Arctic grayling should be listed, they are not necessarily similarly situated with respect to this matter. At the heart of this difference is the competing sovereign interests of the Service – as

an executive branch agency of the federal government – in carrying out its statutory duties as set forth in the ESA, versus the State of Montana's interests in carrying out its own sovereign duties to its citizenry, including its own duly enacted laws for management of wildlife within its own borders. *See* Mont. Code Ann. §§ 87-1-201 and -301. Depending on the outcome of this matter, it is likely that either federal law or state law will largely guide Arctic grayling management in Montana.

The U.S. District Court for the District of Idaho, in granting the State of Idaho's motion to intervene under Fed. R. Civ. P. 24(a), further elaborated on the differing postures of the Service and an intervening state's interests:

> On one level, the applicants and the USFWS share an objective: Both seek to affirm the 'precluded' portion of the USFWS's decision. But they diverge on their 'ultimate objective,' which is the test the Court must apply. The ultimate objective of the applicants is to prevent, or at least delay as long as possible, the effects of listing; the USFWS simply seeks confirmation of its administrative process. Because they do not share the same ultimate objective, no presumption arises of adequate representation. The applicants need only make a 'minimal' showing, as discussed above, that the representation of their interests by the USFWS 'may be' inadequate.

*Western Watersheds Project v. U.S. Fish & Wildlife Serv.*, 2011 U.S. Dist. LEXIS 74485 at 10-11 (D. Idaho 2011). Likewise, in the present matter, the Service largely seeks "confirmation" of its administrative process resulting in the decision not to list Arctic grayling as threatened or endangered under the ESA. On the other hand, Montana seeks to retain the ability to manage Arctic grayling and Arctic

grayling habitat within its borders, pursuant to its own state laws, as it is currently doing. The Service and Montana differ on the "ultimate objective" and, accordingly, the Service cannot adequately represent Montana's interests here. *See Id.*

While Montana and the Service may largely agree on the conservation status of Arctic grayling, other fundamental differences between the two ensure that they bring differing perspectives and, accordingly, that the Service cannot adequately represent Montana's interests in this case.

Montana's motion to intervene is timely, it has significant protected interests in the outcome of this matter that may be impaired, and no other party is able to adequately represent Montana's interests in the matter. Accordingly, Montana meets the requirements for intervention as a matter of right under Fed. R. Civ. P. 24(a).

## B. Alternatively, Montana Should Be Permitted to Intervene Under Fed. R. Civ. P. 24(b).

In the event this Court does not grant intervention as a matter of right, Montana should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B), which provides in part:

> On timely motion, the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law or fact.

Permissive intervention under Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum v. Merrill Lynch*, 712 F.3d 1349, 1353 (9th Cir. 2013) (*citing Beckman Indus. v. Intl. Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).

### 1. A federal question creates jurisdiction.

Montana meets the requirements for permissive intervention. The first requirement, independent jurisdiction, is satisfied in this instance. Federal question jurisdiction exists because this case involves a federal administrative action reviewing federal law under the ESA. *See,* 28 U.S.C. § 1331.

### 2. Montana's motion is timely.

As set forth above, Montana's motion is timely and will not delay these proceedings. This Court has not made any substantive rulings in this matter and the parties cannot be prejudiced by Montana's intervention. Montana has tendered its proposed answer with this motion and brief in support and is prepared to participate in this litigation on the same schedule as the federal Defendant.

### 3. Montana has a defense that shares with the main action with common questions of law or fact under Fed. R. Civ. P. 24(b)(1)(B).

The defenses Montana asserts in its proposed answer are necessarily the same issues of law the federal Defendant will raise, namely that the decision to not list the Upper Missouri River Distinct Population Segment of Arctic grayling as an

endangered or threatened species under the ESA is supported by substantial evidence, is not arbitrary and capricious, and is otherwise in accordance with law. (*See,* State of Montana's Proposed Answer.)

The criteria for permissive intervention are met in this instance and Montana respectfully requests this Court to grant intervention in order for Montana to represent its interests in this action.

## CONCLUSION

For the foregoing reasons, Montana respectfully requests this Court grant its unopposed motion to intervene in this matter.

Dated this 28th day of May, 2015.

*[signature]*
William A. Schenk
Agency Legal Counsel

**Rebecca Dockter**
Chief Legal Counsel

**Tim Fox**
Attorney General of Montana

**Alan Joscelyn**
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rules 7.1 and 24.1 of the Rules of Procedure of the United States District Court for the District of Montana, I certify the following concerning the Brief in Support of Unopposed Motion to Intervene by State of Montana and Montana Department of Fish, Wildlife and Parks:

1. the document is double spaced except for footnotes and quoted and indented material;

2. the document is proportionally spaced, using Times New Roman, 14 point font; and

3. The document contains 2,669 words as calculated by Microsoft Word

*/s/ William A. Schenk*
**William A. Schenk**
Agency Legal Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2015, I served a copy of the:

UNOPPOSED MOTION TO INTERVENE BY STATE OF MONTANA AND MONTANA DEPARTMENT OF FISH, WILDLIFE & PARKS

BRIEF IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE BY STATE OF MONTANA AND MONTANA DEPARTMENT OF FISH, WILDLIFE & PARKS

(PROPOSED) ORDER GRANTING MONTANA'S MOTION TO INTERVENE

(PROPOSED) ANSWER BY THE STATE OF MONTANA AND MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS

on the following persons by mailing it first-class, postage prepaid to the following:

Robert P. Williams
Environment and Natural Resources Divisions
Wildlife & Marine Resources Section
U.S. Department of Justice
Ben Franklin Station
PO Box 7611
Washington D.C. 20044-7611

Jenny K. Harbine
Earthjustice Legal Defense Fund
313 East Main Street
Bozeman MT 59715

Timothy J. Preso
Earthjustice Legal Defense Fund
313 East Main Street
Bozeman MT 59715

Adrienne D. Maxwell
Earthjustice Legal Defense Fund
313 East Main Street
Bozeman MT 59715

**Jessica Snyder**
Paralegal